UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

Michael W. Koper,

               Debtor.
------------------------------------------------------------x
International Christian Broadcasting, Inc.

               Plaintiff,
   against

Michael W. Koper,

               Defendant.
------------------------------------------------------------x
Trinity Christian Center of Santa Ana, Inc.,

               Plaintiff,
   against

Michael W. Koper,

               Defendant.
------------------------------------------------------------x
International Christian Broadcasting, Inc. and
Trinity Christian Center of Santa Ana, Inc.,

               Plaintiffs,
   Against

Michael W. Koper,

               Defendant.
------------------------------------------------------------x

Case No.: 13-74213-las

Chapter 7

Adv. Pro. No.: 13-8167-las

Adv. Pro. No.: 13-8168-las

Adv. Pro. No.: 13-8169-las

**MEMORANDUM DECISION GRANTING
IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO CONSOLIDATE ADVERSARY PROCEEDINGS**

*Appearances:*

LeClair Ryan
*Attorneys for Plaintiff*
By: Michael T. Conway, Esq.
885 Third Avenue, 16th Floor
New York, New York 10022

Winters & King Inc.
*Attorneys for Plaintiff*
By: Michael King, Esq.
2448 E. 81st St., Suite 5900
Tulsa, Oklahoma 74137

Michael Koper
*Pro se Defendant*
100B Haven Avenue #2
Port Washington, New York 11050

Keeling Law Group, PLLC
*Attorneys for Brittany Koper*
By: David R. Keesling, Esq.
401 S. Boston Ave.
Mid-Continent Tower, Suite 450
Tulsa, Oklahoma 74103

HON. LOUIS A. SCARCELLA, UNITED STATES BANKRUPTCY JUDGE

Before the Court is the motion dated May 13, 2014 (the "Motion to Consolidate") [dkt no. 39] of the *pro se* Debtor Defendant, Michael Koper ("Michael" or the "Defendant"), seeking to consolidate the three above-captioned adversary proceedings for purposes of discovery and trial pursuant to Rule 42 of the Federal Rules of Civil Procedure.  International Christian Broadcasting, Inc. ("ICB") and Trinity Christian Center of Santa Ana, Inc. ("TCCSA", together with ICB, the "Plaintiffs"), filed an objection dated June 16, 2014 (the "Objection") [dkt no. 49] to the Motion to Consolidate.  For the reasons set forth below, the Motion to Consolidate is granted to the extent of consolidating the adversary proceedings for trial, but is otherwise denied.  The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986, as amended by Order dated December 5, 2012, effective *nunc pro tunc* as of June 23, 2011.

## FACTS[1]

I.      Background and Prepetition Litigation between the Parties.

TCCSA is a California nonprofit corporation that operates as a church and a religious broadcasting company that does business as Trinity Broadcasting Network.  TCCSA is featured on thousands of television and cable systems worldwide and on the internet.  Michael and his non-debtor spouse, Brittany Koper ("Brittany", together with Michael, the "Kopers"), were employed by TCCSA and related organizations from 2006 to September 2011 (the "Employment Period") and by 2008 they held various positions as high ranking employees and

---

[1] These facts are taken from the pleadings, exhibits and other papers submitted by the parties.

corporate officers.    Brittany is the granddaughter of Paul Crouch, Sr., TCCSA's founder.

TCCSA's Board of Directors and corporate officers are made up of a core group of Brittany's

family members.  During the Employment Period, the Kopers also were appointed directors of

ICB, an associated non-profit entity of TCCSA, which also does business as Heroes Under God

("HUG").

Brittany was employed as TCCSA's Director of Personnel and eventually became

Director of Finance around June 2011.  In connection with her employment, Brittany signed a

confidentiality agreement (the "Confidentiality Agreement") and a Comprehensive Arbitration

Agreement on February 21, 2008.  Under the Confidentiality Agreement with TCCSA, through

its Trinity Broadcasting Network, Brittany agreed to keep certain information she received

through her employment confidential and to return any documents or materials containing any

confidential information to TCCSA upon the termination of her employment.  Pursuant to the

Comprehensive Arbitration Agreement, Brittany agreed and acknowledged that she and TCCSA

will utilize binding arbitration to resolve all disputes that may arise out of the employment

context.

At least from July 2009 to September 2011, Michael resided in Lake Forest,

California.  Michael worked directly with TCCSA's General Counsel in the legal department as

a law clerk.  By 2008, Michael became a corporate officer holding the position of Assistant

Secretary.  On August 16, 2010, Michael also signed a Comprehensive Arbitration Agreement

similar to the one Brittany signed with TCCSA.  Michael also allegedly signed a confidentiality

agreement although a copy of such confidentiality agreement has not been submitted to the

Court.  In June 2011, Michael was promoted to Director of TCCSA's Media Services Agency.

As part of his promotion, Michael received a corporate credit card from TCCSA.  In addition,

when the Kopers were appointed to the Board of Directors for ICB, Michael was provided with an ICB American Express Plum Card in connection with the Kopers' positions as board members.

On September 30, 2011, TCCSA and ICB terminated the Kopers' employment for alleged wrongdoing that occurred in connection with their employment.  Thereafter, TCCSA and ICB commenced multiple legal proceedings against the Defendant, some of which are described herein, in different jurisdictions, including the Superior Court of the State of California in the County of Orange (the "Orange County Superior Court"), the United States District Court for the Central District of California ("California District Court"), the United States District Court for the Eastern District of New York, the Supreme Court of the State of New York, and the New Jersey Superior Court.

On October 18, 2011, Redemption Strategies, Inc., a for-profit corporation, allegedly created by the TCCSA and ICB, sued the Kopers in the Orange County Superior Court for alleged embezzlement of approximately $1.3 million from the Plaintiffs.

On May 4, 2012, TCCSA filed an action before the Orange County Superior Court, Case No. 30-2012-00566620, seeking injunctive relief against the Kopers pursuant to the Confidentiality Agreements to prevent disclosure of certain confidential information, trade secrets and family confidences obtained by them during their employment with TCCSA (the "Confidentiality Enforcement Action").  In that action, TCCSA alleged that the Kopers misappropriated corporate records, including computer records, emails, financial records and corporate resolutions.  TCCSA also accused the Kopers of launching a media smear campaign against it and causing damage to its reputation and financial harm by distributing TCCSA's confidential information to the public.

On June 8, 2012, TCCSA sued the Kopers in another action before the Orange County Superior Court, Case No. 30-2012-00575085, asserting similar allegations as the Confidentiality Enforcement Action but sought, *inter alia,* to compel arbitration of their disputes pursuant to the Comprehensive Arbitration Agreements.  The action was removed to the California District Court under Case No. 8:12-CV-01121.

On June 26, 2012, TCCSA filed an action against the Kopers in California District Court captioned *Trinity Christian Center of Santa Ana, Inc. v. Michael Koper et al.,* No. SACV 12-01049 (the "Central District Case") alleging that during the Employment Period, (i) the Kopers made unlawful use of corporate credit cards, (ii) Michael created a separate entity known as "Michael Koper d.b.a Media Services" in order to unlawfully obtain funds owed to TCCSA's Media Services Agency, (iii) the Kopers obtained and embezzled TCCSA's funds for their own use, and breached their fiduciary duties, including the duty of loyalty owed to TCCSA, (iv) the Kopers stole and converted TCCSA's assets for their own use, and (v) the Kopers breached the terms of the Confidentiality Agreements.  TCCSA also moved to compel the Kopers to participate in an arbitration to resolve the disputes between the parties.  Michael opposed, arguing, *inter alia,* that there is an issue as to the applicability of the arbitration agreement to the existing dispute between the parties.

On June 21, 2013, U.S. District Court Judge David O. Carter granted TCCSA's motion to compel arbitration (the "Arbitration Order") in the Central District Case, finding "that the question of arbitrability itself is one for the arbitrator, and that the California District Court's involvement on this issue must end."  Arbitration Order at 5.  Accordingly, before a determination of TCCSA's underlying claims against the Kopers in the Arbitration Proceeding can proceed, the arbitrator must determine whether the dispute between TCCSA and the Kopers

is even subject to arbitration.

II.     Defendant's Bankruptcy Proceedings.

Michael filed for chapter 7 relief under the Bankruptcy Code on August 14, 2013 and the bankruptcy case was assigned to Judge Dorothy Eisenberg.  On October 14, 2013, TCCSA and ICB commenced three adversary proceedings between them against the Defendant (Adversary Proceeding No. 13-8167 ("Case No. 13-8167"), Adversary Proceeding No. 13-8168 ("Case No. 13-8168"), and Adversary Proceeding No. 13-8169 ("Case No. 13-8169"), collectively, the "Adversary Proceedings").  The complaint in each of the Adversary Proceedings seeks a determination that debts owed by the Defendant to TCCSA and/or ICB are not dischargeable under section 523(a)(2)(A) and (a)(6) of the Bankruptcy Code, and the complaints for Case No. 13-8167 and Case No. 13-8168 also seek an exception from discharge of debt under section 523(a)(4) of the Bankruptcy Code.

A.     *Case No. 13-8167.*

In the complaint filed in Case No. 13-8167 (the "13-8167 Complaint"), ICB alleges that during the Defendant's employment with ICB, the Defendant used the company American Express Plum Card to make numerous unauthorized personal charges, such as Rolex watches, a hunting rifle and scope and a hunting expedition, payment of his personal automobile insurance bill, over $10,000 of cabinetry for the Kopers' home, over $17,000 worth of items at Home Depot, and high end meals and purchases at luxury retailers.  The purchases on the American Express Plum Card total over $280,000.

ICB also avers that the Kopers embezzled from ICB's bank accounts approximately $150,000 to make a down payment on a house they purchased in Lake Forest, California, $36,000 to purchase a Lexus SUV for their personal use, and $30,000 to purchase a

Dodge Ram Truck for the Defendant's personal use.  The Kopers allegedly also transferred

$500,000 from an ICB bank account to an account with Farmers & Merchants Bank which the

Kopers controlled and then used $225,000 from the Farmers & Merchants Bank account to

purchase a condominium in the Defendant's name for cash.  ICB further alleges that the

Defendant distributed over $70,000 in cash embezzled from ICB to the Defendant's uncle,

Joseph McVeigh.

    ICB also contends that the Defendant created fraudulent documents purporting to

be from ICB, including (i) a fraudulent ICB Board Resolution granting the Kopers the sole

authority to manage and maintain the Farmers and Merchants Bank account, (ii) a letter stating

that the Defendant was authorized to receive a $150,000 salary from ICB when the bylaws of

ICB provided that no one was to receive a salary, (iii) documents purporting to lease a portion of

the Kopers' home, which was purchased with ICB funds, to ICB for use as storage, (iv) false

entries into ICB's Quickbooks account to make it appear as if the expenses charged to the credit

card were legitimately related to ICB/HUB events, (v) credit card statements and bank

statements which were provided to the other ICB directors in an effort to conceal the

Defendant's wrongdoing, (vi) tax return documents, including form 990s, whereby one version

of the forms was submitted to the IRS by the Kopers but another version was kept in the office of

ICB's President for public review, and (vii) a closing statement provided to Brittany's father to

make it appear that Brittany's father purchased the condominium.

    Pursuant to the 13-8167 Complaint, the First Count seeks a determination under

11 U.S.C. § 523(a)(2)(A) that the Defendant obtained ICB's funds through fraudulent documents

used to deceive ICB and third parties.  The representations were materially false and were made

with the specific intent to mislead ICB, and ICB and third parties justifiably relied upon such

false representations.  Accordingly, the debt owed by the Defendant is nondischargeable because

it was for money obtained by false pretenses, false representations and actual fraud.  The Second

Count seeks a determination that the Defendant was acting in a fiduciary capacity and committed

fraud, defalcation, embezzlement and larceny with respect to the Defendant's funds and

corporate documents and that the debt owed by the Defendant is nondischargeable under 11

U.S.C. § 523(a)(4).  Lastly, the Third Count seeks a determination that the Defendant willfully

and maliciously caused damage and injury to ICB and its property by embezzling, converting

and stealing ICB's funds without any authorization or consent and that this debt should also be

nondischargeable under 11 U.S.C. § 523(a)(6).

   *B.*   *Case No. 13-8168.*

     In the complaint filed in Case No. 13-8168 (the "13-8168 Complaint"), TCCSA

alleges that the Defendant (1) created fraudulent documents, which included a multi-year

consulting agreement, by forging signatures of TCCSA directors and officers on the documents

in order to benefit himself financially, and (2) conspired with Brittany to misappropriate TCCSA

funds by making purchases in excess of $25,000 for personal use on the TCCSA credit card

issued to the Defendant and to have TCCSA pay the unauthorized credit card charges.  The

Defendant also allegedly redeemed corporate credit card bonus points in excess of $16,000 for

his personal benefit, received expense reimbursements from TCCSA for expenses that were

never actually incurred, and placed his father on TCCSA's payroll even though his father was

not an employee of TCCSA.  TCCSA also asserts that the Defendant registered a fictitious

business in the name of "Koper doing business as Media Services" with the Orange County

Clerk Recorder's Office, opened bank accounts with US Bank and with Bank of America in

Media Services' name, and then misappropriated TCCSA's funds by diverting and depositing

checks intended for its Media Services Agency into those bank accounts.

The First Count of the 13-8168 Complaint seeks a determination that the debts owed to TCCSA are nondischargeable because the Defendant obtained such funds under false representations, false pretenses and actual fraud pursuant to 11 U.S.C. § 523(a)(2). The Second Count seeks a determination pursuant to 11 U.S.C. § 523(a)(4) that the debt is nondischargeable on the basis that the Defendant's actions during the Employment Period constituted embezzlement, and/or defalcation while acting in a fiduciary capacity. The Third Count seeks a determination pursuant to 11 U.S.C. § 523(a)(6) that the Defendant's actions constitute willful and malicious injury to TCCSA and/or its property and the debt is nondischargeable.

   *C.  Case No. 13-8169.*

In the complaint filed in Case No. 13-8169 (the "13-8169 Complaint"), TCCSA and ICB allege, among other things, that the Defendant obtained a $22,000 loan from Brittany's grandmother, Janice Crouch ("Janice"), by misrepresenting that he needed the loan to avoid active, military deployment. Defendant allegedly represented that he signed a contract with the United States Marine Corps (the "Marine Corps") for four years of military service and that he obtained a $22,000 loan through a bank lender which he used to finance his education. Defendant purportedly claimed that he was called to active duty in Afghanistan while in college, and was injured in battle and was put on inactive duty. Defendant allegedly had a fraudulent letter created to appear it was from the Marines Corps indicating that he had to repay the loan or be forced back into active duty or put in jail. Based upon the Defendant's representations, Janice agreed to loan the Defendant the $22,000. The Defendant has not repaid Janice for the loan and Janice purportedly discovered in December of 2011 that the Defendant has never been in the military.

TCCSA and ICB also contend that the Defendant stole confidential and privileged information and documents, such as emails, memoranda, reports, audio recordings/tapes, and other materials from the general counsel's offices, through the use of computers and mail and unlawfully transferred the stolen information to third parties. This theft of information was intended to damage the rights of the Plaintiffs.

The First Count of the 13-8169 Complaint seeks a determination that the Defendant obtained the loan through fraud and false pretenses with regard to his military service and obligations, TCSSA and ICB justifiably relied upon the fraudulent documents, and the debt owed by the Defendant is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). The Second Count seeks a determination that by illegally accessing and stealing the Plaintiffs' confidential and privileged information and communications, the Defendant willfully and maliciously caused damage and injury to the Plaintiffs and their property, and that such debt owed by the Defendant is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

        *D.*     *Discovery Disputes.*

Answers to the Adversary Proceedings were due November 14, 2013. The Defendant filed an answer to the complaints on November 6, 2013 asserting general denials, affirmative defenses, and a counterclaim that in the event the alleged debts are discharged, a judgment against the Plaintiffs should be awarded for reasonable attorneys' fees and costs. The Plaintiffs filed an answer to the Defendant's counterclaim in each of the Adversary Proceedings on November 18, 2013.

ICB served third party subpoenas in Case No. 13-8167 on the Defendant's current employer, Penta Communications, LLC, and its co-owners, Joseph Iglesias and Jason Boyd, on October 15, 2013, the same date the Summons was issued. The third party subpoenas demanded

the production of documents by October 31, 2014 for the period after the Kopers' employment

was terminated and scheduled third party depositions on the same October 31, 2014 date. These

third party subpoenas were issued notwithstanding the deadline for filing an answer had not even

passed and before the required Rule 26(f) planning conference under the Federal Rules of Civil

Procedure ("Fed. R. Civ. P.") had taken place.

Even before Defendant's answer was filed, the Defendant, the Plaintiffs, and third

party deponents engaged in extensive motion practice regarding various discovery disputes.

Without delving into the substance of those disputes, almost every subpoena was met with one or

more motions for a protective order or motion to quash, which in turn elicited an objection

and/or a corresponding motion to compel discovery. In Case No. 13-8167 alone, by the time

Judge Eisenberg retired on March 27, 2014, there were four pending motions for a protective

order and/or motions to compel. Two more motions to quash were filed before the bankruptcy

case and the Adversary Proceedings were transferred to this Court on May 19, 2014. Currently,

this Court has eleven pending discovery motions before it in Case No. 13-8167. Two of the

motions to compel filed by the Defendant in Case No. 13-8167 were also filed in Case No. 13-

8168 and Case No. 13-8169.

III.    Motion to Consolidate the Adversary Proceedings.

On May 14, 2014, the Defendant filed this motion seeking to consolidate the three

Adversary Proceedings for purposes of discovery and trial. The Defendant argues that the

Plaintiffs allege in all three Adversary Proceedings that (a) the Defendant committed fraud by

lying to Janice about prior military service in order to obtain the personal loan and that the

Defendant continued making these misrepresentations until he was terminated in September

2011, (b) because of these misrepresentations and the fact that the Kopers were trusted family

10

members, the Kopers were promoted to high ranking officer positions by the Plaintiffs and that

the Kopers embezzled money from them, and (c) after the Defendant's employment with the

Plaintiffs was terminated, the Defendant accessed the Plaintiffs' computers through blackmail

and extortion so he could steal the Plaintiffs' documents and distribute them to third parties.

Defendant submits that these allegations raise common questions of law and fact, and the series

of events that give rise to the allegations are linked together and cannot be viewed separately.

The Defendant contends that all the allegations raised in the three Adversary Proceedings were

combined into one lawsuit brought by Redemption Strategies, Inc.  Moreover, the Defendant

asserts that the same witnesses will be present for each Adversary Proceeding as the Plaintiffs

share common employees, officers and directors.

      In addition, the Defendant seeks a protective order pursuant to Fed. R. Civ. P.

26(c) in his Motion to Consolidate on the basis that the Plaintiffs issued a Notice of Deposition

for Case No. 13-8167 and Case No. 13-8169 and demanded the Defendant sit for a deposition for

21 hours for the three Adversary Proceedings in addition to approximately 17 hours of deposition

that they already have taken in the other lawsuits.  Defendant argues that such deposition is

unduly burdensome and improperly seeks to increase the costs of litigation for the Defendant and

to harass him.  Accordingly, the Defendant seeks to limit the amount of time the Plaintiffs may

take his deposition to no more than one day of seven hours.

      In their Objection, the Plaintiffs do not oppose the consolidation of Case No. 13-

8167 and Case No. 13-8169 for purposes of trial to avoid duplication and to conserve judicial

resources.  However, the Plaintiffs oppose the consolidation of these two adversary proceedings

for purposes of discovery, arguing that these adversary proceedings are based upon different

facts.  ICB has not completed its depositions of the Kopers with respect to Case No. 13-8167.

As to the military false pretense claim in Case No. 13-8169, the Plaintiffs have deposed the Defendant on this issue in the non-bankruptcy proceedings but wish to dispose the Defendant again in the context of the adversary proceeding.  In addition, the Kopers have not been deposed in Case No. 13-8169 regarding the Plaintiffs' claims of corporate theft.

As to Case No. 13-8168, Plaintiffs opposes consolidation of this case with the other two adversary proceedings because the claims underlying Case No. 13-8168 are the subject of an arbitration proceeding before the Central District of California, which has been stayed as a result of the Defendant's bankruptcy filing.  TCCSA has filed a motion to stay Case No. 13-8168 and to compel the Defendant to participate in the arbitration proceeding (the "Motion to Compel Arbitration").  TCCSA does state that should the Court deny its Motion to Compel Arbitration, then TCCSA desires to have the maximum amount of time to depose the Kopers to prepare this case for trial, but TCCSA does not object to consolidation of Case No. 13-8168 with the other adversary proceedings solely for purposes of trial.

A hearing on the Motion to Consolidate was held by the Court on July 14, 2014 and the Court took the matter under advisement.  On September 30, 2014, the Court issued a Memorandum Decision and Order denying TCCSA's Motion to Compel Arbitration.

In considering the Motion to Consolidate, the Court has evaluated the arguments of the parties at the July 14, 2014 hearing, and has reviewed and considered the motion itself and exhibits submitted in conjunction with the motion.  The Court also has taken judicial notice of the contents of the docket in this bankruptcy case and the Adversary Proceedings.  *Teamsters Nat'l Freight Indus. Negotiating Comm. et al. v. Howard's Express, Inc. (In re Howard's Express, Inc.)*, 151 Fed. Appx. 46, 48 (2d Cir. 2005) (Courts are empowered to take judicial notice of public filings, including a court's docket).

<u>DISCUSSION</u>

I.      General.

At issue before the Court is whether the three Adversary Proceedings should be

consolidated for purposes of trial and discovery.

Pursuant to Fed. R. Civ. P. 42 as made applicable by Bankruptcy Rule 7042:

[i]f actions before the court involve a common question of law or
fact, the court may:
   1)      join for hearing or trial any or all matters at issue in the actions; or
   2)      consolidate the actions; or
   3)      issue any other orders to avoid unnecessary cost or delay.

Fed. R. Bankr. P. 7042.  "The trial court has broad discretion to determine whether consolidation

is appropriate." *Johnson v. The Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).  In exercising

its discretion in determining whether consolidation is appropriate, the Court must consider:

[w]hether the specific risks of prejudice and possible confusion
[are] overborne by the risk of inconsistent adjudication of common
factual and legal issues, the burden on parties, witnesses, and
available judicial resources posed by multiple lawsuits, the length
of time required to conclude multiple suits as against a single case,
and the relative expense to all concerned of the single-trial,
multiple-trial alternatives.

*Id.*, 899 F.2d at 1285 (citing *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th

Cir. 1985)).  The court needs to balance considerations of convenience and judicial economy

with risks of prejudice and a concern for a fair and impartial trial.  *Megan-Racine Assocs., Inc. v.*

*Niagara Mohawk Power Corp. (In re Megan-Racine Assocs., Inc.)*, 176 B.R. 687,  691 (Bankr.

N.D.N.Y. 1994).  When an opposing party demonstrates substantial prejudice, then the motion to

consolidate would be defeated.  *Id.*

II.     Request to Consolidate for the Purpose of Trial.

In the Adversary Proceedings before this Court, there clearly exists common

questions of law as all three proceedings seek an exception to discharge pursuant to section

523(a)(2) and 523 (a)(6) of the Bankruptcy Code, and two of the proceedings also seek an

exception to discharge pursuant to section 523(a)(4) of the Bankruptcy Code.  While the facts

relating to the various claims arise out of different allegations of misconduct, there are sufficient

common questions of fact given that complaints involve (a) the same parties, (b) similar

allegations of the Defendant creating fraudulent documentation and embezzling and

misappropriating the Plaintiffs' funds for his personal use and benefit, and (c) allegations of

misconduct or fraudulent transactions occurring during the course of the Defendant's

employment with the Plaintiffs.  Moreover, many of the witnesses would be the same for all

three Adversary Proceedings.  As the Plaintiffs do not object to consolidation for trial purposes

of Case No. 13-8167, Case No. 13-8169, and Case No. 13-8168 should the Court deny the

Motion to Compel Arbitration, the Court finds it to be judicially efficient to have the

determination of the common questions of law and fact conducted in a single proceeding as that

would conserve judicial resources without any risk of prejudice to the parties or witnesses.

III.    Request to Consolidate for the Purpose of Discovery.

As to the Defendant's request to consolidate the three Adversary Proceedings for

purposes of discovery, the Court acknowledges the Defendant's concerns about the potential for

abuse and harassment if the Plaintiffs were to be permitted to depose the Defendant for

approximately twenty-one hours of actual deposition time when the Plaintiffs have already

deposed him in other lawsuits on some of the same issues.  However, the Court notes that any of

the depositions taken of the Defendant in pending litigation prior to the Defendant's bankruptcy

filing may not have focused upon the issue of dischargeability.  While there is a possibility that

the Defendant may need to sit through more than seven hours of deposition time, it is premature

14

at this juncture to gauge whether the information sought at the deposition will be duplicative or

unnecessary, whether the deposition can be accomplished in seven hours, or that there will be an

abuse of the discovery process.  Moreover, the Court recognizes that the potential for misuse of

the discovery process is not just one-sided.

Fed. R. Civ. P. 26(b), as made applicable by Bankruptcy Rule 7026, empowers

the courts to control the discovery process and prevent any abuse without the need to consolidate

the multiple actions for discovery purposes.  Indeed "the court may alter the limits in these rules

on the number of depositions and interrogatories or on the length of depositions."  Fed. R. Bankr.

P. 7026(b)(2)(A).  Moreover, the court, on motion or *sua sponte*, must limit the frequency or

extent of discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative,
> or can be obtained from some other source that is more convenient,
> less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to
> obtain the information by discovery in the action; or
> (iii) the burden of expense of the proposed discovery outweighs its
> likely benefit, considering the needs of the case, the amount in
> controversy, the parties' resources, the importance of the issues at
> stake in the action, and the importance of the discovery in
> resolving the issues.

Fed. R. Bankr. P. 7026(b)(2)(C).

Thus far, the *pro se* Defendant, Brittany and third-party deponents, and the

Plaintiffs have been vigilant in bringing motions for protective orders, motions to quash, and

motions to compel discovery under the Bankruptcy Rules to Judge Eisenberg and to this Court in

order to protect their respective rights.  Given the potential prejudice that may occur if discovery

for the Adversary Proceedings were to be consolidated and limited as to the length of time as

opposed to the scope, the Court finds that consolidation not be to appropriate or necessary at this

time.  Rather, the Court will manage the discovery process by hearing and determining these

issues as they arise on a case by case basis and can limit the scope of discovery under

Bankruptcy Rule 7026(b) so as to avoid any risk of abuse of the discovery process.  Accordingly,

this Memorandum Decision is without prejudice to, and does not preclude, any party from

seeking a protective order under Fed. R. Civ. P. 26(c).

CONCLUSION

For the foregoing reasons, the Court concludes that the Motion to Consolidate is

granted in part, and the Adversary Proceedings consolidated for trial, and denied insofar as it

seeks to consolidate the Adversary Proceedings for purposes of discovery.

A separate order granting in part and denying in part the Motion to Consolidate

will be issued concurrent with this Memorandum Decision.



**Dated: September 30, 2014**                                         **Louis A. Scarcella**
      **Central Islip, New York**                                   **United States Bankruptcy Judge**