UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

MICHAEL W. KOPER,

                       Debtor.
-----------------------------------------------------------------x
INTERNATIONAL CHRISTIAN
BROADCASTING, INC., and TRINITY
CHRISTIAN CENTER OF SANTA ANA, INC.,

                  Plaintiffs,

    v.

MICHAEL W. KOPER,

                  Defendant.
-----------------------------------------------------------------x

Case No: 8-13-74213-las

Chapter 7

Adv. Pro. No.: 8-13-08169-las

## MEMORANDUM DECISION AND ORDER

Before the Court is the motion of plaintiffs International Christian Broadcasting, Inc. ("ICB") and Trinity Christian Center of Santa Ana, Inc. ("TCCSA") to impose sanctions on David R. Keesling, Esq. ("Keesling"), former counsel for defendant Michael Koper ("Koper") [Adv. Pro. No. 13-8169, dkt. no. 140]. Specifically, plaintiffs seek, pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), the imposition of sanctions in the form of an award of attorneys' fees incurred in opposing defendant's motion under Fed. R. Civ. P. 60(b) which sought to vacate certain orders and a judgment entered by the Court on consent of defendant. Keesling opposed plaintiffs' motion to impose sanctions [Adv. Pro. No. 13-8169, dkt. no. 151], and plaintiffs replied [Adv. Pro. No. 13-8169, dkt. nos. 153, 154].

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986, as amended by Order dated December 5, 2012. The matter has been fully briefed and the Court has carefully

1

considered the parties' submissions, the relevant law and the record in this case. For the following reasons, plaintiffs' motion to impose sanctions is granted.

I.      Background

The Court presumes familiarity with this case. The facts and procedural history are discussed in the Court's prior decision in the related adversary proceeding commenced by ICB against Koper, Adv. Pro. No. 13-08167 ("ICB Proceeding"). *See Decision and Order Denying Motion Under Fed. R. Civ. P. 60(b)* dated May 23, 2016 [dkt. no. 293].[1] Accordingly, the Court provides background only to the extent necessary to decide plaintiffs' motion to impose sanctions.

Koper, the debtor in this chapter 7 case, is an attorney. He and his former spouse, Brittany Koper (n/k/a Brittany Davidson) ("Brittany"), were both previously employed by plaintiffs. Their employment terminated in September of 2011. Since then, plaintiffs, Koper and Brittany have been engaged in long and contentious litigation in various jurisdictions both at the federal and state court level. On August 14, 2013, Koper filed for relief under chapter 7 of the Bankruptcy Code, thus staying all litigation pending against him pursuant to 11 U.S.C. § 362(a).

On October 14, 2013, plaintiffs commenced the following adversary proceedings against Koper seeking a determination of dischargeability of debt under 11 U.S.C. § 523(a)(2), (a)(4) and (a)(6): (i) the ICB Proceeding, (ii) a related adversary proceeding commenced by TCCSA, Adv. Pro. No. 13-08168 ("TCCSA Proceeding"), and (iii) this adversary proceeding brought by both ICB and TCCSA, Adv. Pro. No. 13-08169. The three adversary proceedings

---

[1] Unless otherwise stated, all subsequent docket references will be to documents entered on the docket of the ICB Proceeding and are cited as "[dkt. no. __]".

were jointly administered for purposes of trial, with the ICB Proceeding serving as the lead adversary proceeding for docketing purposes [dkt. no. 137].

On April 1, 2015, plaintiffs filed a Motion for Sanctions Concerning Defendant's Fabrication of Evidence and Perpetration of Fraud on the Court ("Sanctions Motion") [dkt. no. 172]. Opposition to the Sanctions Motion was filed on May 5, 2015 [dkt. nos. 193, 194, & 195]. Plaintiffs filed a reply on May 12, 2015 [dkt. no. 199].

An evidentiary hearing on plaintiffs' Sanctions Motion, with a trial on the issue of dischargeability of debt to commence immediately thereafter, was scheduled for the week of October 26, 2015. On the morning of October 26, 2015, prior to commencement of the hearing on the Sanctions Motion, the parties requested additional time to continue their discussions to resolve the pending dispute. Later that morning, the parties presented the Court with a Stipulation of Resolution of Sanctions Motion and Stipulation to Judgment in Adversary Proceeding ("Stipulation") [dkt. no. 262-1]. Pursuant to the Stipulation, Koper acknowledged as true: (i) the allegations set forth in the Sanctions Motion and in the papers, pleadings and recordings submitted by plaintiffs in support thereof and (ii) the allegations and debts set forth in the complaint filed in each of the three adversary proceedings and that the debt owed to plaintiffs is not dischargeable under 11 U.S.C. § 523. Koper also "waive[d] all rights to appeal or otherwise challenge [the] [S]tipulation". *See* Stipulation, at 2. The Stipulation was signed by the parties and by their counsel, which included Keesling as Koper's counsel.

At the October 26, 2015 hearing, Koper testified under oath that he had an opportunity to read and discuss the Stipulation with his counsel and that he understood the terms and conditions to which he had agreed. [Oct. 26, 2015 Hr'g Tr. 11:13-24; 12:1-3; 12:14-24; 13:11-17; 17:1-7]. In addition, Keesling confirmed to the Court that he had an opportunity to review the terms and conditions of the Stipulation and to discuss them with Koper. [Oct. 26, 2015 Hr'g Tr. 17:8-13]. The Court observed at the hearing that the Stipulation did not

contain any conditions precedent nor did it provide that the terms and conditions were subject to the occurrence of any other event. [Oct. 26, 2015 Hr'g Tr. 21:12-13, 22-15; 22:1-13]. Neither Koper nor Keesling informed the Court otherwise.

The parties spent the remainder of the day and the next day negotiating the language of the proposed order resolving the Sanctions Motion and the form of the consent judgment. In the afternoon of October 27, 2015, the parties submitted a proposed "Order Granting Sanctions Motion on Consent" and "Judgment on Consent", which contained the proposed findings of fact and conclusions of law agreed upon by the parties.

On October 30, 2015, after careful review and consideration of the proposed findings of fact and conclusions of law submitted by the parties, the Court entered, on Koper's consent, (i) an Order approving the Stipulation [dkt. no. 262], (ii) an Order Granting Sanctions Motion on Consent ("Sanctions Order") [dkt. no. 263], and (iii) a Judgment on Consent ("Consent Judgment") [dkt. no. 264] in each of the three adversary proceedings. Koper also conceded the factual allegations and conclusions of law set forth in the Sanctions Order. The Sanctions Order (a) provided that defendant's answer and counterclaim filed in each of the adversary proceedings are stricken, (b) directed plaintiffs to file with the Court and serve on defendant and his counsel supplemental pleadings in support of their request for monetary sanctions within 21 days of the entry of the Sanctions Order, and (c) directed defendant to file any reply to such supplemental pleadings within 14 days thereafter.

Unable to resolve the issue on monetary damages, plaintiffs filed their supplemental memorandum of law in support of their request for attorneys' fees and costs relating to the Sanctions Motion on November 20, 2015. Koper did not file a reply within the fourteen-day time frame mandated by the Sanctions Order. Rather, more than 45 days later, on January 19, 2016, Koper filed a motion under Fed. R. Civ. P. 60(b)(3) and (6) ("Rule 60(b) Motion")

[dkt. no. 272] seeking to set aside (i) the Order approving the Stipulation, (ii) the Sanctions Order and (iii) the Consent Judgment.

The Court held a hearing on March 3, 2016 and, for the reasons set forth on the record, denied the Rule 60(b) Motion. On May 2, 2016, Keesling, on behalf of Koper, filed a notice of appeal ("Notice of Appeal") [dkt. no. 282] of this Court's denial of the Rule 60(b) Motion (the "Appeal") and a motion for a stay pending appeal [dkt. no. 284].

On May 4, 2016, plaintiffs filed a motion for sanctions against Koper and Keesling on the basis that the Rule 60(b) Motion was brought in violation of Fed. R. Civ. P. 11 because it lacked evidentiary and legal support and was brought for an improper purpose to delay the hearing on damages in the pending adversary proceedings ("First Rule 11 Motion") [dkt. no. 291]. Attached to the First Rule 11 Motion is a memorandum of law in support of plaintiffs' request to impose sanctions along with a cover letter dated February 2, 2016 requesting that Koper and Keesling withdraw the Rule 60(b) Motion within the 21-day safe harbor period under Fed. R. Civ. P. 11(c)(2) on the grounds that the Rule 60(b) Motion (i) was frivolous and in violation of Fed. R. Civ. P. 11(b) as it is without evidentiary or legal support, (ii) was filed for an improper purpose to delay the proceedings, and (iii) was contrary to both Koper's and Keesling's prior representations to the Court. Plaintiffs did not include an affidavit of service or other evidence as to when the cover letter and memorandum of law were served upon Koper and Keesling. However, the February 2, 2016 cover letter indicated the letter and the memorandum of law were served via electronic mail and certified mail that day. Keesling does not deny receiving the letter and accompanying memorandum of law on or around February 2, 2016.

On May 23, 2016, the Court issued the *Decision and Order Denying Motion Under Fed. R. Civ. P. 60(b)*, which memorialized the Court's prior oral ruling on March 3 and

explained further the bases for the ruling [dkt. no. 293]. On June 24, 2016, plaintiffs filed opposition to defendant's motion requesting a stay pending appeal.

By letter filed with the Court on July 13, 2016, plaintiffs withdrew the First Rule 11 Motion, without prejudice, "given the jurisdictional questions raised by the appeal" and stated their intention "to re-file the Motion with the District Court in due course." *See* Letter dated July 13, 2016 [dkt. no. 297]. Plaintiffs did not "re-file" the motion or otherwise move for sanctions before the District Court.

A hearing on defendant's motion for a stay of the Stipulation, Sanctions Order and Consent Judgment pending appeal was scheduled for September 27, 2016 [dkt. no. 299]. On September 22, 2016, Keesling filed a letter requesting the Court adjourn the hearing to October 18, 2016 due to a scheduling conflict [dkt. no. 301]. Plaintiffs objected to the late adjournment request [dkt. no. 302]. Pursuant to an order dated September 23, 2016, the Court denied Keesling's request for an adjournment, but permitted Keesling to appear telephonically [dkt. no. 303]. The Court held the hearing on defendant's motion for a stay pending appeal on September 28, 2016, at which Keesling appeared telephonically on behalf of Koper in support of the motion and plaintiffs' counsel appeared in person in opposition to the motion. For the reasons set forth on the record of the hearing, the Court denied defendant's motion for a stay pending appeal and the Court's ruling was memorialized in a Decision and Order dated October 5, 2016 [dkt. no. 304].

The Court then scheduled a hearing on plaintiffs' request for damages on the Sanctions Motion [dkt. no. 305]. On December 6, 2016, defendant filed opposition to plaintiffs' request for damages [dkt. no. 307]. At the start of the hearing on December 12, 2016, Keesling made an oral application to withdraw as counsel for Koper. Plaintiffs and Koper did not oppose Keesling's oral application. For the reasons set forth on the record of the hearing, the Court granted the oral application but directed Keesling to file a written application pursuant

to the district's local bankruptcy rules to withdraw as Koper's counsel of record, which application was filed on December 13, 2016 [dkt. no. 308]. Keesling's written motion to withdraw as counsel was granted pursuant to an Order dated January 9, 2017 [dkt. no. 311].

For the remainder of the December 12, 2016 hearing on damages, Koper acted *pro se*. At the hearing, Koper consented to plaintiffs' request for attorneys' fees and costs with respect to their Sanctions Motion and to the amount of the debt excepted from discharge in each of the adversary proceedings. On December 27, 2016, the Court entered an order granting plaintiffs' request for attorneys' fees and costs [dkt. no. 309] and entered judgment in favor of plaintiffs in each of the adversary proceedings in the amount of the debt excepted from discharge [dkt. no. 310].

By letter dated February 1, 2017 and filed with the District Court on February 16, 2017, Koper withdrew his appeal of this Court's denial of the Rule 60(b) Motion on the ground he reached an agreement with plaintiffs. On February 22, 2017, the District Court "So Ordered" Koper's withdrawal of the Appeal and directed the Clerk of the District Court to close the case before it [dkt. no. 314]. On March 7, 2017, this Court closed each of the pending adversary proceedings between the parties in due course. However, the main bankruptcy case remained opened pending the chapter 7 trustee's final report.

On May 5, 2017, plaintiffs filed a proposed stipulation with Koper to reopen this adversary proceeding for the purpose of entering an amended judgment with respect to the award of attorneys' fees and costs on the Sanctions Motion, and to limit plaintiffs' execution on the judgment to 5% of Koper's gross wages during any given pay period. [Adv. Pro. No. 13-8169, dkt. no. 134]. On May 26, 2017, the parties filed a revised stipulation to reopen this adversary proceeding for the purpose of entering a separate judgment for plaintiffs' attorneys' fees and costs with respect to the Sanctions Motion with the same 5% limitation on collection against Koper's wages [Adv. Pro. No. 13-8169, dkt. no. 135]. The Court entered the separate

judgment for attorneys' fees and costs in the amount of $332,418.96 on May 30, 2017 [Adv. Pro. No. 13-8169, dkt. no. 137].

On June 21, 2017, plaintiffs filed a motion to impose sanctions against Keesling under Fed. R. Civ. P. 11 [Adv. Pro. No. 13-8169, dkt. no. 140], on the basis that the Rule 60(b) Motion lacked evidentiary and legal support and was interposed for an improper purpose (the "Second Rule 11 Motion"). The Second Rule 11 Motion also requested in passing without any legal authority the imposition of sanctions pursuant to the Court's inherent power based on plaintiffs' claim that Keesling acted in bad faith and willfully abused the judicial process in bringing the Rule 60(b) Motion.

Koper, again acting *pro se*, filed a motion to strike the Second Rule 11 Motion ("Motion to Strike") [Adv. Pro. No. 13-8169, dkt. no. 142] asserting that plaintiffs reached out to him on April 25, 2017 to stipulate to reopen this adversary proceeding for the twofold purpose of (i) seeking entry of a judgment in respect of the award of attorneys' fees and costs in connection with the Sanctions Motion and (ii) moving for sanctions under Rule 11 against Keesling. Koper stated that he refused to consent to reopening this adversary proceeding to permit the filing of a sanctions motion against Keesling and that he signed the stipulation to reopen this adversary proceeding only after plaintiffs agreed to revise the proposed stipulation to remove the language regarding the filing of a sanctions motion against Keesling. [Adv. Pro. No. 13-1869, dkt. no. 142-1]. Koper argued the adversary proceeding was reopened for the limited purpose of entering a judgment against him only. Plaintiffs filed opposition to the Motion to Strike [Adv. Pro. No. 13-8169, dkt. no. 145]. Plaintiffs did not challenge Koper's assertions, but raised other points as to why the Motion to Strike was improper and should be denied in all respects. At the August 7, 2017 hearing on the Motion to Strike, Koper withdrew his motion.

The Court entered two scheduling orders with respect to the Second Rule 11 Motion [Adv. Pro. No. 13-8169, dkt. nos. 147, 149]. Keesling opposed the Second Rule 11 Motion [Adv. Pro. No. 13-8169, dkt. no. 151], and plaintiffs replied [Adv. Pro. No. 13-8169, dkt. nos. 153, 154]. Thereafter, the Court heard oral argument.

Because Keesling raised several procedural issues as to the timing, service and filing of plaintiff's motion for sanction, the Court includes in Part II of this decision a discussion of the procedural requirements of serving and filing a motion for sanctions, as well as the legal principles governing a motion for sanctions under Rule 11. In Part III, the Court addresses the parties' submissions and arguments

II.    Discussion

   A.    Fed. R. Civ. P. 11

The purpose of Fed. R. Civ. P. 11 "is to deter baseless filings" and "streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990) (citing Advisory Committee Note on Rule 11, 28 U.S.C. App., p. 576). It does so by "[imposing] an 'affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading' before actually signing it." *Hoatson v. N.Y. Archdiocese*, No. 05-Civ-10467 (PAC), 2007 WL 431098, at *9 (S.D.N.Y. Feb. 8, 2007) (quoting *O'Malley v. N.Y.C. Transit Auth.*, 896 F.2d 704, 706 (2d Cir. 1990)). Under Fed. R. Civ. P. 11(b), an attorney who presents "a pleading, written motion, or other paper" to the court "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the filing: (1) "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" (2) contains "claims, defenses, and other legal contentions" that are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" (3) contains factual

contentions that are either supported by evidence or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;" and (4) contains "denials of factual contentions" that "are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information". [2] Fed. R. Civ. P. 11(b)(1)-(4). This "require[s] litigants to 'stop-and-think' before initially making legal and factual contentions . . . and emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable . . . ." Fed. R. Civ. P. 11 advisory committee note to 1993 amendment. Counsel, therefore, must "undertake [a] reasonable inquiry to ensure that papers filed are well-grounded in fact, legally tenable, and not interposed for any improper purpose." *Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363, 368 (E.D.N.Y. 2013) (quoting *Young v. Suffolk Cnty.*, 922 F. Supp. 2d 368, 396 (E.D.N.Y. 2013)). As discussed below, in the Second Circuit, when considering a motion for sanctions under Fed. R. Civ. P. 11, the court applies an "objective unreasonableness" standard. *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003).

While Rule 11(a) requires "[e]very pleading, written motion, and any other paper" filed with the court be signed by at least one attorney of record individually (or by a party

---

[2] Fed. R. Civ. P. 11(b) provides:

> (b) **Representations to the Court.** By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

personally if the party is unrepresented), Rule 11(b) makes clear that an attorney who files, submits or later advocates the pleading, written motion or other paper, is certifying that the requisite inquiry under Rule 11(b) was made to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances, even if the person did not sign the paper. Fed. R. Civ. P. 11.

Under Fed. R. Civ. P. 11(c), "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated," the court, on motion or on its own initiative, "may impose an appropriate sanction on any attorney, law firm or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1)-(3). The decision whether to impose sanctions lies within the discretion of the court. "[S]anctions under Rule 11 are discretionary, not mandatory." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012). *See also Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004) ("Even if the district court concludes that the assertion of a given claim violates Rule 11. . . the decision whether or not to impose sanctions is a matter for the court's discretion."); *McLeod v. Verizon New York, Inc.*, 995 F. Supp. 2d 134, 145 (E.D.N.Y. 2014) ("[T]he decision whether to impose sanctions is not mandatory, but rather is a matter for the court's discretion".).

In the bankruptcy context, Bankruptcy Rule 9011 governs the conduct of attorneys and parties when filing papers with the court. Although plaintiffs' Second Rule 11 Motion references Bankruptcy Rule 9011, it specifically seeks relief under Fed. R. Civ. P. 11 rather than under Bankruptcy Rule 9011. Nevertheless, Bankruptcy Rule 9011 is similar to Rule 11. As stated by the Second Circuit, Bankruptcy Rule 9011 "parallels Federal Rule of Civil Procedure 11, containing only such modifications as are appropriate in bankruptcy matters." *In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 227 (2d Cir. 1991) (internal quotations and citation omitted).

11

Like its counterpart Rule 11(b), Bankruptcy Rule 9011(b) provides that by presenting to the court a pleading or other paper, an attorney certifies "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the filing "is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," that "legal contentions" contained therein "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law," that "factual contentions" have "evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery," and that "denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief." Fed. R. Bankr. P. 9011(b)(1)-(4). And like its counterpart Rule 11(c), Bankruptcy Rule 9011(c) provides that if Bankruptcy Rule 9011(b) is violated, the court, on motion or on its own initiative, has the discretion to impose sanctions. Fed. R. Bankr. P. 9011(c)(1)-(2).

Because Bankruptcy Rule 9011 "parallels" Rule 11, the "application of Rule 9011 is informed by Rule 11 jurisprudence." *Cohoes*, 931 F.2d at 227. Hence, courts apply cases decided under Rule 11 to those brought under Bankruptcy Rule 9011. *Gwynn v. Walker (In re Walker)*, 532 F.2d 1304, 1308 (11th Cir. 2008), *cert. denied*, 556 U.S. 1181 (2009). *See also In re Kersner*, 412 B.R. 733, 743 (Bankr. D. Md. 2009) ("Because of the similarity between Bankruptcy Rule 9011 and Fed. R. Civ. P. 11, in deciding cases based on violations of Rule 9011, courts may look to cases that interpret [Fed. R. Civ. P.] 11.") (internal quotes omitted); *In re Jazz Photo Corp.*, 312 B.R. 524, 531 (Bankr. D.N.J. 2004) ("[Bankruptcy] Rule 9011 parallels Fed. R. Civ. P. 11. . . . Courts apply the same standard in interpreting cases under [Bankruptcy] Rule 9011 as in cases involving Rule 11.").

Like Rule 11, Bankruptcy Rule 9011 seeks to deter baseless filings in bankruptcy proceedings. *Jazz Photo Corp.*, 312 B.R. at 531. "Bankruptcy Rule 9011, like its counterpart [Rule] 11, plays an important role in maintaining the professionalism of the bar and the integrity of court processes. That role is best effectuated when the Rule is invoked sparingly, and '[a] request for sanctions under Rule 11 is not a tactical device.'" *In re Taub*, 439 B.R. 276, 281 (Bankr. E.D.N.Y. 2010) (quoting *Nakash v. U.S. Dep't. of Justice*, 708 F. Supp. 1354, 1370 (S.D.N.Y. 1988)). All doubts must be resolved in favor of the signer of the pleading. *Lax v. 29 Woodmere Blvd. Owners, Inc.*, 812 F. Supp. 2d 228, 242 (E.D.N.Y. 2011).

B.    Compliance with the Safe Harbor Provision: Fed. R. Civ. P. 11(c)(2)

Before a court may consider the merits of a Rule 11 motion, the movant must have complied with the 21-day safe harbor notice required under Rule 11(c)(2) by (1) first serving a motion for sanctions on the opposing party, and (2) providing the opposing party with a 21-day period to withdraw or appropriately correct the challenged document before a motion for sanctions is filed or presented to the court. "The safe-harbor provision is a strict procedural requirement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012). *See also Guarino v. Resciniti* (*In re Resciniti*), Case No. 8-16-70669-las, Adv. Pro. No. 8-16-08068-las, 2019 WL 1451278, at *1 (Bankr. E.D.N.Y. Mar. 29, 2019).

1.  Service of the Proposed Rule 11 Motion

The proposed Rule 11 motion must be served upon the opposing party prior to the motion being filed with the Court so that the opposing party will have "notice of the alleged violation and an opportunity to respond before sanctions are imposed." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.

> Rule 11 and principles of due process require that "the subject of
> a sanctions motion be informed of: (1) the source of authority for
> the sanctions being considered; and (2) the specific conduct or

> omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (3d Cir. 1999). "Indeed, only conduct explicitly referred to in the instrument providing notice is sanctionable." *Id.* (citation omitted); *accord Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 389 (2d Cir. 2003).

*Star Mark Mgmt., Inc.,* 682 F.3d at 175. The Second Circuit has held that an informal letter warning without the service of a separate Rule 11 motion will not trigger the commencement of the 21-day safe harbor period. *Id.* However, the proposed motion need not include supporting affidavits or a memorandum of law. *Id.*, 682 F.3d at 176.

More importantly, the filed Rule 11 motion need not be exactly the same as the motion served on the opposing party. Courts have rejected a "hypertechnical" reading of Rule 11 that would require the filed motion be identical in all respects to the motion served during the safe harbor period. *Merritt v. Lake Jovita Homeowner's Assn., Inc.,* No.: 8:08-cv-98-T-27EAJ, 2010 WL 11507746, at *1 (M.D. Fla. May 10, 2010). So long as the Rule 11 motion filed with the court rests on substantially the same grounds set forth in the earlier notice of the motion given to the opposing party, the filed motion would comply with the safe harbor requirement. *Star Mark Mgmt., Inc.*, 682 F.3d at 176 (finding that, while the motion served during the safe harbor period did not contain supporting affidavits or a memorandum of law, the motion did comply with the spirit of Rule 11 as it gave notice that sanctions would be sought under Rule 11 and identified six reasons why the movant believed Rule 11 had been violated).

2.   21-day Safe Harbor Period and Service of the Motion for Sanctions

As noted, before a motion for sanctions is filed with the court, the party alleged to have filed or presented the challenged document must be given 21 days to withdraw or correct the challenged document. Fed. R. Civ. P. 11(c)(2). "The motion for sanctions is not . . . to be filed until at least 21 days . . . after being served. If, during this period, the alleged violation

is corrected, as by withdrawing (whether formally or informally) some allegation or contention, the motion should not be filed with the court." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Similarly, if a court disposes of the offending contention before the expiration of the 21-day safe harbor period, a Rule 11 motion cannot be filed as the alleged offending party did not have the full 21 days to withdraw the challenged document. *Ridder v. City of Springfield*, 109 F.3d 288, 295 (6th Cir. 1997).

> The 21-day, safe harbor service requirement controls not only the earliest date on which a motion may be filed ..., it also indirectly controls the last date on which a Rule 11 sanctions motion may be filed. At the very least, a party must serve its Rule 11 motion before the court has ruled on the pleading, and thus before the conclusion of the case. Otherwise, the purpose of the "safe harbor" provision would be nullified. This has been interpreted to mean that Rule 11 motions must be served at least a full 21 days before the court concludes the case or resolves the offending contention ….

*In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 n.2 (2d Cir. 2003) (citing Moore's Federal Practice § 11.22[1](c) (3d ed. 2001)). "Ordinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely." Fed. R. Civ. P. 11 advisory committee's note to 1993 Amendment. *See also NXIVM Corp. v. Foley*, No.: 1:14-cv-1375 (LEK), 2015 WL 7776923 (N.D.N.Y. Dec. 2, 2015) (denying Rule 11 motion as untimely where the Court dismissed the case before the 21 day safe-harbor period had elapsed); *Rojas v. Theobald*, No. 02-CV-3634 (DRH)(MLO), 2007 WL 2455133 (E.D.N.Y. Aug. 23, 2007) (denying Rule 11 sanctions where the motion was served and filed after all claims have been dismissed or withdrawn and the opposing party could no longer withdraw the challenged claims), *aff'd sub nom. Rojas v. Schkoda*, 319 Fed. Appx. 43 (2d Cir. 2009). A motion for sanctions that fails to comply with the safe harbor provision must be denied. *Castro v. Mitchell*, 727 F. Supp. 2d 302, 306 (S.D.N.Y. 2010).

C.    Timing of Filing Rule 11 Motion with the Court

Other than to ensure the opposing party a 21-day safe harbor period to withdraw or appropriately correct the challenged document, Rule 11 does not specify the latest date when a sanctions motion should be *filed* with the Court. The Seventh Circuit addressed this with a local rule by requiring any Rule 11 motion be filed "as soon as practicable after discovery of a Rule 11 violation", but in all events no later than within 90 days after final judgment. *Kaplan v. Zenner*, 956 F.2d 149, 151 (7th Cir. 1992) (noting that under Northern District of Illinois local rule 46, requests for sanctions under Rule 11 made within 90 days after final judgment to be timely). Although the local rule no longer applies to Rule 11 motions, nevertheless, courts in the Seventh Circuit still hold that 90 days after final judgment represents 'the outer parameters' for filing a Rule 11 motion that complies with the 21-day safe harbor provision. *Intellect Wireless Inc. v. Sharp Corp.*, 87 F. Supp. 3d 817, 837 (N.D. Ill. 2015) (quoting *Sullivan v. Hunt*, 350 F.3d 664, 666 (7th Cir. 2003)); *Northlake Mktg. & Supply, Inc. v. Glaverbel, S.A.*, 194 F.R.D. 633, 635 (N.D. Ill. 2000) (noting that the local rule no longer imposes a per se bar but it is within the court's discretion as to whether the "bright-line time constraint" should be imposed).

The Third Circuit adopted a supervisory rule that a party seeking sanctions must file the motion before entry of final judgment and where appropriate, at an earlier time as soon as practicable after discovery of the Rule 11 violation. *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90 (3d Cir. 1988). The Third Circuit reasoned that "[s]wift disposition of a Rule 11 motion is essential so that any ensuing challenge to it might be included with the appeal on the merits. This approach serves the interest of judicial economy without risking a significant waste of district court efforts." *Id.*, 847 F.2d at 99. *See also Jazz Photo Corp.*, 312 B.R. at 534 (noting that "[w]hether a timely sanctions motion is required to preserve the twenty-one-day safe harbor period or to carry out the objections of expeditious disposition, the filing of a

sanctions motion after entry of final judgment is procedurally defective".) (internal quotations omitted).

The Fourth, Sixth, and Eleventh Circuits have held that a Rule 11 motion must be "served and filed" prior to disposition of the matter by the court but those cases involved a failure to comply with the 21-day safe harbor requirement before filing the Rule 11 motion with the court. *In re Walker*, 532 F.3d at 1309 (holding that a renewed Rule 11 motion filed after the court rendered its decision must be denied where the opposing party did not have 21 days to withdraw the offending contention before the court ruled on the contention); *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389–90 (4th Cir. 2004) (en banc) (finding a Rule 11 motion filed a few days after the district court granted summary judgment did not comply with the safe harbor provision)*; Ridder*, 109 F.3d at 295 (denying a Rule 11 motion that was filed one month after summary judgment was entered without first serving the motion in compliance with the safe harbor provision). Even the Sixth Circuit subsequently held

> [t]he determination in *Ridder* that the motion was required to be filed with the court prior to adjudication of the case was unnecessary because the defendant failed to comply with Rule 11 when it did not serve the motion on the plaintiff's counsel for the twenty-one day "safe harbor" period. Accordingly, to the extent that *Ridder* stands for such a proposition, it is dicta and not binding on this court.

*Powell v. Squire, Sanders & Dempsey*, Nos. 98-3668, 98-3670, 182 F.3d 918 (Table), 1999 WL 519186, at *3 (6th Cir. July 16, 1999) (finding defendant's Rule 11 motion filed 2 weeks after the motion for judgment on the pleadings was granted timely where defendant served the Rule 11 motion on the plaintiff's counsel more than 3 months prior to judgment being rendered).

The Second Circuit case, *In re Pennie & Edmonds LLP*, has often been cited alongside *Ridder* and *Brickwood* for the proposition that Rule 11 motions must be "served and filed" prior to judgment. However, *Pennie & Edmonds* did not concern a Rule 11 motion brought by a party, but rather on the court's own initiative so the 21-day safe harbor requirement was inapplicable. 323 F.3d at 90. The Second Circuit cited to *Ridder* for the proposition that "[a]lthough Rule 11 contains no explicit time limit for serving the motion, the 'safe harbor' provision functions as a practical time limit, and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission." *Id.*, 323 F.3d at 89. *See also Patrizzi v. Bourne in Time, Inc.*, No. 11 Civ. 2386 (PAE), 2013 WL 316148, at *3 (S.D.N.Y. Jan. 28, 2013) (noting that the cases cited in *Pennie & Edmonds* all involved situations where the opposing party was not given proper Rule 11 safe harbor notice and an opportunity to withdraw the offending contention prior to entry of judgment).

While there are some cases within the Second Circuit that have held a Rule 11 motion untimely when filed after the court rendered its judgment, these cases all involved situations where the moving party did not provide the opposing party the proper safe harbor notice and opportunity to withdraw or appropriately correct the challenged pleading prior to the court's entry of judgment. *Brown v. Kay,* No. 11 Civ. 7304 PAE, 2012 WL 573198, at *3 (S.D.N.Y. Feb. 21, 2012) (denying request that the Court issue an order to show cause why plaintiff and plaintiff's counsel have not violated Rule 11(b) where defendants failed to file and serve a Rule 11 motion prior to dismissal of the action and declining to impose sanctions under the court's inherent power); *Castro*, 727 F. Supp. 2d at 306 (denying Rule 11 motion that was served on the same day it was filed even though the motion was filed prior to dismissal of the claims against the movant); *Rojas*, No. 02-CV-3623 (DRJ)(MLO), 2007 WL 2455133, at *9-10

(denying Rule 11 motion that was filed more than 4 years after the commencement of the lawsuit where the moving party failed to serve the motion prior to filing the motion with the court and failed to provide the requisite 21-day safe harbor before the court ruled on the pleading); *Langdon v. Cty. of Columbia*, 321 F. Supp. 2d 481, 484 (N.D.N.Y. 2004) (finding no proof defendant served the Rule 11 motion upon the plaintiff prior to filing the motion with the court).

Thus, in the Second Circuit, "there is no requirement that a moving party *file* a sanctions motion at a specific time, so long as the motion is served on the nonmoving party twenty-one days prior to filing the motion and the final judgment by the Court." *Salvini v. ADVFN PLC*, No. 13 CIV. 7082 (ER), 2016 WL 1703414, at *2 (S.D.N.Y. Apr. 27, 2016) (emphasis in original) (finding movants met the safe-harbor requirement when they had served the Rule 11 motion 7 months prior to the court's decision and 21 months prior to the filing of the actual motion where the court denied the movant's first sanctions motion and directed the movant to withhold from renewing the sanctions motion pending the outcome of the appeal). Therefore, a Rule 11 motion is timely even if filed post-judgment so long as the opposing party received the requisite notice at least 21 days prior to the court's ruling on the challenged pleading. *Mealus v. Nirvana Spring Water N.Y. Inc.*, No. 7:13-cv-313 (MAD/DEP), 2015 WL 4546023, at *5 (N.D.N.Y. July 28, 2015) (finding the opposing party had sufficient notice of the proposed sanctions motion and an opportunity to withdraw when more than 5 months passed before the court entered final judgment); *Patrizzi*, No. 11 Civ. 2386 (PAE), 2013 WL 316148, at *3 (finding that the plaintiff did receive appropriate Rule 11 notice and had more than 5 months to withdraw the offending pleading before the court dismissed the claims even though Rule 11 motion was filed after the court's decision).

D.      Objective Unreasonableness Standard

In the Second Circuit, when considering a motion for sanctions, "the standard for triggering the award of fees under Rule 11 is objective unreasonableness, and is not based on the subjective beliefs of the person making the statement." *Storey*, 347 F.3d at 387 (internal quotations and citation omitted). *See also Star Mark Mgmt., Inc.*, 682 F.3d at 177. Good faith belief is not enough. *In re Blue Pine Group, Inc.*, 448 B.R. 267, 272 (Bankr. D. Nev. 2010), *aff'd*, 457 B.R. 64 (B.A.P. 9th Cir. 2011), *aff'd in part and vacated in part*, 526 Fed. Appx. 768 (9th Cir. 2013). As discussed above, Rule 11 imposes an affirmative duty on an attorney to conduct a reasonable inquiry as to the law and the facts before presenting and advocating a position to the court. *See Hoatson*, No. 05-Civ-10467 (PAC), 2007 WL 431098 at *9; *In re Martin*, 350 B.R. 812, 817 (Bankr. N.D. Ind. 2006).

Whether an attorney conducted a reasonable inquiry before presenting the challenged pleading to the court depends upon the circumstances, such as

> "how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading …; or whether he depended on forwarding counsel or another member of the bar." *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329 (2d Cir. 1995). Sanctions are appropriate against an attorney if a "factual allegation in a complaint, motion or other paper filed with the court has no evidentiary support … unless there [is] a specific disclaimer that additional investigation is necessary." *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) (citation omitted). The allegations in question must be "utterly lacking in support" in order to be deemed sanctionable. *Id.* Rule 11 sanctions are not warranted where the "evidentiary support is merely weak and the claim is unlikely to prevail." *See Scientific Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-CV-1851 NGG, 2007 WL 1026411, [at] *2 (E.D.N.Y. Mar. 30, 2007).

*Mealus*, No. 7:13-cv-313 (MAD/DEP), 2015 WL 4546023, at *6. With respect to legal contentions, "[t]he fact that a legal theory is a long-shot does not necessarily mean it is sanctionable. The operative question is whether the argument is frivolous, i.e., the legal

position has 'no chance of success,' and there is 'no reasonable argument to extend, modify or reverse the law as it stands.'" *Fischoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) (quoting *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995)). An attorney violates Rule 11 "where it is patently clear that a claim has absolutely no chance of success under existing precedents." *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir. 1985) (*superseded on other grounds by rule*).

A court must "strive to avoid the wisdom of hindsight." *Id.* "[A]ny ambiguity as to whether the basis for assertions in papers are objectively reasonable must be resolved in favor of the non-filing party". *Taub*, 439 B.R. at 282. "'[W]hen divining the point at which an argument turns from merely losing to losing *and* sanctionable, . . . courts [must] resolve all doubts in favor of the signer' of the pleading." *Lax,* 812 F. Supp. 2d at 242 (quoting *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (emphasis in original)).

E.    Type of Sanctions to be Awarded: Factors Considered

Rule 11(c) provides that if "the court determines that Rule 11(b) has been violated, the court *may* impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c) (emphasis added). As stated above, the decision whether to impose sanctions lies within the discretion of the court. *Ipcon Collections LLC*, 698 F.3d at 63; *Perez*, 372 F.3d at 325; *McLeod*, 995 F. Supp. 2d at 145.

"[D]ecisions to impose Rule 11 sanctions must be made with restraint". *Pannonia Farms, Inc. v. USA Cable*, No. 03 Civ. 7841 (NRB), 2006 WL 2872566, at *5 (S.D.N.Y. Oct. 5, 2006). The imposition of sanctions must be exercised with caution. *Mealus*, No. 7:13-cv-313 (MAD/DEP), 2015 WL 4546023, at *4. Factors a court considers when determining whether sanctions should be imposed include:

> (1) whether the improper conduct was willful, or negligent;
> (2) whether it was part of a pattern o[f] activity, or an isolated event;
> (3) whether it infected the entire pleading, or only one particular count or defense;
> (4) whether the person has engaged in similar conduct in other litigation;
> (5) what effect it had on the litigation process in time or expense;
> (6) whether the responsible person is trained in the law; and
> (7) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case.

*Bobcar Media LLC v. Aardvark Event Logistics, Inc.*, Slip Copy No. 16-CV-885 (JPO), 2019 WL 422613, at *3 (quoting *Cont'l Cas. Co. v. Marshall Granger & Co., LLP*, No. 11 Civ. 3979 (CS), 2017 WL 1901969, at *7 (S.D.N.Y. May 9, 2017)). *See also* Fed. R. Civ. P. 11 advisory committee note to 1993 amendment.

Any sanction imposed must be measured by what is necessary to deter repetition. Rule 11(c)(4) provides that:

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c)(4).

Accordingly, the sanction to be imposed 'may, but need not, include payment of the other parties' expenses", *Cooter & Gell*, 496 U.S. at 393, but should be commensurate with what is necessary "to punish and deter future similar conduct" as opposed to compensating the moving party. *Bobcar Media LLC*, 2019 WL 422613, at *3 (quoting *Tantaros v. Fox News Network LLC*, No. 17 Civ. 2958, 2018 WL 1662779, at *3 (S.D.N.Y. Mar. 16, 2018)). "[T]he purpose of Rule 11 sanctions is to deter rather than to compensate". Fed. R. Civ. P. 11 advisory committee note to 1993 amendment. "Rule 11 is not a fee shifting statute". *Cooter & Gell*, 496 U.S. at 409. *See also Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty.*

*of Albany*, 369 F.3d 91, 98 (2d Cir. 2004) (per curiam) ("Rule 11 is not a fee-shifting mechanism and does not create an entitlement to attorney's fees." (internal quotation marks and citation omitted)).

Within this legal framework, the Court now turns to plaintiffs' motion for sanctions, first addressing Keesling's argument that the motion must be denied on procedural grounds. For the following reasons, the Court rejects Keesling's contention that plaintiffs' motion is procedurally infirm and, after careful consideration of the merits of the motion for sanctions, concludes that sanctions under Rule 11 are appropriate under the circumstances of this case.

III.    Analysis

A.  Procedural Issues

Keesling argues that the Second Rule 11 Motion is defective on several procedural grounds and must therefore be denied. First, he contends that the content and argument of the First Rule 11 Motion differ from the Second Rule 11 Motion and the safe-harbor notice period given by plaintiffs relates only to the First Rule 11 Motion; thus, plaintiffs failed to provide the required 21-day safe harbor period with respect to the Second Rule 11 Motion. Additionally, Keesling maintains that even if plaintiffs could rely on the 21-day safe harbor notice provided with respect to the First Rule 11 Motion, the First Rule 11 Motion was filed in the ICB Proceeding, in which TCCSA was not a party plaintiff; and thus, TCCSA cannot rely on the same 21-day safe harbor notice and cannot move for Rule 11 sanctions in this adversary proceeding. Second, Keesling argues that plaintiffs cannot file a Rule 11 motion after the proceedings have concluded, especially where the Second Rule 11 Motion contains arguments relating to the Notice of Appeal, the motion for a stay pending appeal, and the Appeal before the District Court, all of which occurred after this Court made its ruling on the

Rule 60(b) Motion. Lastly, Keesling argues that plaintiffs waived their right to seek Rule 11 sanctions against him when they did not object to his withdrawal as Koper's counsel.

      i.  Whether A New Safe Harbor Notice Period is Needed

It is well established that a properly served and filed Rule 11 motion may be renewed at a later date without having to provide yet another safe harbor period so long as the relief sought and the grounds asserted in the renewed motion are essentially identical to those asserted in the first motion. *Merritt*, No.: 8:08-cv-98-T-27EAJ, 2010 WL 11507746, at *2. *See also Holgate v. Baldwin*, 425 F.3d 671 (9th Cir. 2005) (finding that the 21-day safe harbor was satisfied as to a renewed Rule 11 motion where the defendant had already served plaintiff's counsel with the requisite 21-day notice but the initial motion that was filed was denied without prejudice to renewal at a later date); *Divane v. Krull Elec. Co., Inc.,* 200 F.3d 1020, 1025 (7th Cir. 1999) (finding compliance with Rule 11's safe harbor provision and the court's prior dismissal of the initial sanctions motion as premature did not extinguish the effective notice given when the motion was later renewed post-judgment). Indeed, courts in this Circuit have allowed Rule 11 motions to be renewed where the 21-day safe harbor period has been provided even where the offending pleading is no longer before the court. *Int'l Technologies Mktg., Inc. v. Verint Sys., Ltd.*, 1:15-cv-2457-GHW, 2019 WL 1244493, at *10 (S.D.N.Y. Mar. 18, 2019) (collecting cases).

Here, the grounds asserted in the Second Rule 11 Motion are essentially identical to the memorandum of law served on Keesling that triggered the start of the 21-day safe harbor period and the subsequent filing with the Court of the First Rule 11 Motion, to wit, that the Rule 60(b) Motion lacked evidentiary and legal support, was filed for an improper purpose, and was in direct contravention of the terms of the Stipulation and representations made by Koper and Keesling on the record at the October 26, 2015 hearing to approve the Stipulation. The withdrawal of the First Rule 11 Motion as a result of the Appeal and the subsequent

renewal of the Rule 11 motion do not detract from the fact that (i) plaintiffs had already provided Keesling with the requisite 21-day safe harbor notice that plaintiffs would seek the imposition of Rule 11 sanctions as to the Rule 60(b) Motion and (ii) Keesling took no corrective action during this safe harbor period nor at any time prior to the Court rendering its decision on the Rule 60(b) Motion. Thus, Keesling is not entitled to, nor are plaintiffs required to provide, another 21-day safe harbor notice with respect to the Second Rule 11 Motion.

The Second Rule 11 Motion, however, does differ from the memorandum of law served on Keesling in one respect, i.e., the additional factual assertions that Keesling's filing of the Notice of Appeal of the Court's decision denying the Rule 60(b) Motion and the motion for a stay pending appeal, and proceeding with the Appeal further exacerbated the frivolousness of the Rule 60(b) Motion and continued to be in direct contravention of Koper's waiver of all rights to appeal or otherwise challenge the Stipulation. Because no appeal was pending at the time plaintiffs served their memorandum of law in support of Rule 11 sanctions in February 2016, thus triggering the 21 day safe harbor period, plaintiffs could not have referenced conduct occurring after the service and filing of the First Rule 11 Motion, to wit, the Notice of Appeal, and the subsequent events relating to the Appeal, including the motion for a stay pending appeal. Keesling was not on notice that plaintiffs would seek Rule 11 sanctions for conduct occurring after the service and filing of the First Rule 11 Motion and he did not, therefore, have an opportunity to withdraw or correct the alleged sanctionable conduct.

"Permitting a court to sanction a party for conduct occurring after the service and filing of a Rule 9011 motion is contrary to our recognition that due process in the imposition of Rule 9011 sanctions requires particularized notice." *Ettinger and Assocs., LLC v. Miller (In re Miller)*, 730 F.3d 198, 205 (3d Cir. 2013) (internal quotations omitted). "'Particularized notice' sufficient to comport with due process is provided where 'a party is on notice as to the

particular factors that he must address if he is to avoid sanctions.'" *Id.* at 205-206 (quoting *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1357 (3d Cir. 1990)).

There is no dispute that the conduct in respect of the appellate process occurred after the service and filing by plaintiffs of the First Rule 11 Motion and the Court's denial of the Rule 60(b) Motion. Yet, plaintiffs argue that the assertions in the Second Rule 11 Motion regarding both the Appeal and the motion for a stay pending appeal demonstrate Keesling's continued prosecution of frivolous arguments contained in the Rule 60(b) Motion. However, the Court will not consider Keesling's conduct concerning the Appeal and the motion for a stay pending appeal as this challenged conduct occurred after the service and filing of the First Rule 11 Motion and, as a result, no separate safe harbor notice was provided that would have permitted Keesling to address his alleged offensive conduct. The Court also notes that the presence of the factual assertions regarding the Appeal and motion for stay pending appeal do not, in and of themselves, warrant denial of the Second Rule 11 Motion. The additional factual assertions concerning Keesling's post-motion conduct solely pertained to the appeal process. As discussed, the legal and factual contentions relating to the Rule 60(b) Motion in the memorandum of law served on Keesling, which triggered the 21 day safe harbor provision, the First Rule 11 Motion and the Second Rule 11 Motion are essentially identical and focus principally on whether the Rule 60(b) Motion had any legal and factual support and whether Keesling filed the Rule 60(b) Motion for an improper purpose. As such, Keesling had particularized notice of (i) plaintiffs' intention to seek Rule 11 sanctions against him, (ii) the very reasons why plaintiffs sought to impose sanctions against him, and (iii) the form of the sanctions sought under Rule 11. Therefore, the Court will consider that portion of the Second Rule 11 Motion that seeks to impose sanctions on Keesling for his filing and advocating the Rule 60(b) Motion.

ii.  TCCSA's Standing

Keesling argues, without providing any legal authority, that TCCSA does not have standing to renew the Rule 11 sanctions motion because the First Rule 11 Motion was filed in the ICB Proceeding where TCCSA was not a party plaintiff. Keesling contends that the First Rule 11 Motion was abandoned when the motion was withdrawn and now plaintiffs are improperly renewing the Rule 11 motion in this proceeding where both ICB and TCCSA are party plaintiffs. He argues that this adversary proceeding, the ICB Proceeding and the TCCSA Proceeding were consolidated only for purposes of trial and the First Rule 11 Motion should have also been filed in this adversary proceeding in order for TCCSA to have complied with the safe harbor notice previously given. Accordingly, Keesling maintains that TCCSA never provided the requisite safe harbor notice as to this proceeding. The Court disagrees.

First, ICB and TCCSA were the moving parties for the First Rule 11 Motion and the Second Rule 11 Motion and all the pleadings were signed by counsel for both plaintiffs even though the First Rule 11 Motion was filed only in the ICB Proceeding. Second, the proposed Rule 11 motion served upon Keesling which triggered the 21-day safe harbor, the First Rule 11 Motion and the Second Rule 11 Motion list all three adversary proceedings by ICB and/or TCCSA against Koper in this bankruptcy case in the caption of the pleadings. Although the First Rule 11 Motion and the Second Rule 11 Motion were filed on the docket under different adversary proceedings, albeit all related, it is clear not only from the caption but also from the contents of the Rule 11 motions, including the memorandum of law served upon Keesling, that plaintiffs seek to impose sanctions against Keesling for his alleged offensive conduct in all three adversary proceedings.

Third, while the three adversary proceedings were consolidated only for purposes of trial, the parties treated the ICB Proceeding as the lead case for docketing purposes for all matters common to all three proceedings. Interestingly, Keesling filed his Rule 60(b) Motion

27

only in the ICB Proceeding even though he sought to vacate the Order Approving Stipulation, the Sanctions Order and the Consent Judgment entered in all three adversary proceedings. Similarly, Keesling filed the motion for stay pending appeal only in the ICB Proceeding even though the motion sought to stay the inquest on the amount of damages with respect to all three adversary proceedings. It would be contrary to the intent and substance of the Rule 60(b) Motion and the motion for stay pending appeal if the Court had considered the merits of vacating the Order Approving the Stipulation, Sanctions Order, and Consent Judgment only in the ICB Proceeding and let the very same orders and the Consent Judgment stand in the other two related proceedings simply because Keesling filed the Rule 60(b) Motion in the ICB Proceeding only. Indeed, plaintiffs necessarily had to file the First Rule 11 Motion in the ICB Proceeding because that was the only proceeding in which Keesling filed his Rule 60(b) Motion, keeping in line with the understanding and agreement of the parties that the ICB Proceeding served as the lead case for docketing matters common to all three proceedings.

Lastly, it is also disingenuous to argue TCCSA does not have standing to pursue the Second Rule 11 Motion when the purpose of the Rule 60(b) Motion was to vacate the Order Approving the Stipulation, Sanctions Order and the Consent Judgment entered in favor of not only ICB but also TCCSA. TCCSA was a signatory to the underlying Stipulation to which Koper and Keesling agreed that all rights to appeal or otherwise challenge the Stipulation are waived. Because the Rule 60(b) Motion sought to unravel the Stipulation between the parties and the express relief consented to by Koper, TCCSA had an interest in opposing the Rule 60(b) Motion and issuing a Rule 11 warning to Keesling and Koper. The Court also notes that the Second Rule 11 Motion does not seek separate sanctions in the form of attorneys' fees and costs for each adversary proceeding so there is no duplication of fees and costs nor are sanctions sought for conduct specific only to the one adversary proceeding. Therefore, the

Court rejects Keesling's argument and finds that TCCSA has standing to bring the Second Rule 11 Motion.

        iii.   Filing of the Second Rule 11 Motion after the Adversary Proceeding Closed

Keesling also contends that the Second Rule 11 Motion is untimely because the motion was filed after the adversary proceedings were closed on March 3, 2017. He claims that Koper agreed to reopen this adversary proceeding for the limited purpose of amending the judgment against him. As discussed above, it is well settled in the Second Circuit that a Rule 11 motion, whether filed for the first time or renewed at a later date, is timely even if it is filed after the Court has rendered its decision so long as the opposing party has received the requisite 21-day safe harbor notice prior to the Court's ruling. *Mealus*, No. 7:13-cv-313 (MAD/DEP), 2015 WL 4546023, at *5; *Patrizzi*, No. 11 Civ. 2386 (PAE), 2013 WL 316148, at *3. There is no dispute that Keesling received such notice before the Court ruled on the Rule 60 Motion.

Moreover, "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell*, 496 U.S. at 395. Collateral issues include whether sanctions are appropriate under Rule 11. *Resciniti*, Case No. 8-16-70669-las, Adv. Pro. No. 8-16-08068-las, 2019 WL 1451278, at *2 n.1. "[T]he imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether an attorney has abused the judicial process, and, if so, what sanction would be appropriate. Such a determination may be made after the principal suit has been terminated." *Cooter & Gell*, 496 U.S. at 396. "In addition, Bankruptcy Code § 105(a) provides a bankruptcy court with authority to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of' the Bankruptcy Code, and allows the court to 'tak[e] action or mak[e] any determination necessary or appropriate to . . . prevent an abuse of process.'" *In re Miller Auto. Group Inc.*, 536 B.R. 828, 835 (B.A.P. 8th Cir. 2015) (quoting 11 U.S.C. § 105(a)).

Courts have reopened bankruptcy cases and adversary proceedings in order to consider a Rule 11 motion. *Id.* (affirming bankruptcy court's decision to reopen a bankruptcy case six months after it was voluntarily dismissed and to order the disgorgement of fees and imposition of sanctions under Bankruptcy Rule 9011); *Berger Indus., Inc. v. Artmark Prods. Corp. (In re Berger Indus., Inc.)*, 298 B.R. 37, 40 (Bankr. E.D.N.Y. 2003) (finding a Rule 11 motion timely where defendant moved to reopen an adversary proceeding four months after it was closed in order to consider whether Rule 11 sanctions should be imposed against plaintiff and its counsel); *Kliegl Bros. Universal Elec. Stage Lighting Co., Inc.*, 238 B.R. 531 (Bankr. E.D.N.Y. 1999) (reopening bankruptcy case to consider sanctions against debtor's principal and former principal for misrepresentations and omissions in the debtor's final report and application for a final decree). *Cf. In re Memorial Estate, Inc.*, 116 B.R. 108, 112 (N.D. Ill. 1990) (finding that a court may consider Rule 11 sanctions where the motions were filed prior to the close of the case and the opposing party was on notice). *But see In re Grigg*, 568 B.R. 498 (Bankr. W.D. Pa. 2017) (finding creditor's sanctions motion under 28 U.S.C. § 1927 to be untimely where creditor waited more than eight months from the expiration of the debtor's time to file a petition for writ of certiorari to the U.S. Supreme Court to file a motion to reopen the adversary proceeding and then more than a year from the same expiration date and more than two months from the reopening of the proceeding to file its sanctions motion). Additionally, courts can consider Rule 11 motions even if the case was reopened for a different purpose. *In re Miller Auto. Group Inc.*, 536 B.R. at 831 (noting that case was reopened to allow the United States Trustee to file a fee disgorgement motion but the United States Trustee subsequently amended its motion not only to request the disgorgement but also to request the imposition of Rule 11 sanctions pursuant to the court's inherent authority).

Thus, the Second Rule 11 Motion is timely even though it was filed more than a year after the Court rendered its oral ruling. The First Rule 11 Motion was filed in May of 2016 and withdrawn without prejudice as plaintiffs intended to refile the motion in District Court. Plaintiffs, however, did not move for sanctions in District Court against Keesling, and the Appeal was dismissed on consent of Koper. The adversary proceedings against Koper were closed in due course two weeks after the dismissal of the Appeal. The delay in reopening the adversary proceeding in order to renew the sanctions motion was due to plaintiffs' efforts to reopen this adversary proceeding with Koper's consent rather than filing a separate motion to reopen. Nevertheless, plaintiffs did file the Second Rule 11 Motion within four months of the dismissal of the Appeal and the closing of the adversary proceedings, and within a month of this adversary proceeding being reopened, which isn't as untimely as it may seem.

Even though this adversary proceeding was reopened for purposes of amending the Consent Judgment, the Court can consider and determine the Second Rule 11 Motion because whether Keesling's filing and advocating the Rule 60(b) Motion constitutes an abuse of the judicial process is a collateral issue and is properly before the Court. *Cooter & Gell*, 496 U.S. at 396. Further, Keesling's conduct calls into question the integrity of the administration of Koper's bankruptcy case. The parties negotiated the language of the Stipulation, Sanctions Order and Consent Judgment over a period of two days in court. Koper made representations to the Court under oath concerning his understanding of the terms and conditions set forth in each of these documents. Keesling confirmed on the record that he had an opportunity to discuss the documents with Koper before both he and Koper signed the documents and the Court approved them.

Keesling further contends that plaintiffs filed the Second Rule 11 Motion on June 21, 2017 after stipulating with Koper that the adversary proceeding would be reopened for the limited purpose of allowing plaintiffs to amend the judgment entered on the Sanctions Motion

in order to retaliate against Keesling for securing in favor of Carra Crouch ("Carra"), Koper's former sister-in-law, a jury verdict on June 5, 2017 and a $2 million judgment on June 12, 2017 against TCCSA. There is nothing in the record evidencing any retaliatory conduct by plaintiffs. Keesling did not present any witnesses or introduce any documentary evidence to support his conclusory allegation that plaintiffs' sanctions motion was filed in retaliation for Keesling's having prevailed in other litigation amongst the parties.

Further, the Second Rule 11 Motion challenges Keesling's filing and prosecution of the Rule 60(b) Motion in 2016. As noted above, when faced with a claim for sanctions under Rule 11, courts apply a standard of objective unreasonableness. The central focus is on the offending party's conduct and what reasonable inquiry was undertaken before the person signed the pleading and filed it with the Court, and not on the motives or purposes of the moving party in seeking to impose sanctions. Whether the moving party itself violated Rule 11 in bringing a motion for sanctions would also be subject to review under Rule 11, and a party whose pleading is challenged may ask that sanctions be levied against the moving party for filing an improper Rule 11 motion. That remedy, however, does not detract from the starting point of the court's analysis when deciding whether Rule 11(b) has been violated, i.e., the obligation to have conducted a reasonable inquiry before signing, submitting and later advocating a pleading before the court.

In sum, because Keesling already had been provided with the requisite 21-day safe harbor notice as to plaintiffs' intention to seek sanctions under Rule 11 with respect to the Rule 60(b) Motion, the Second Rule 11 Motion is properly before the Court.

iv.   Keesling's Withdrawal as Counsel

Plaintiffs' decision to not object to Keesling's withdrawal as Koper's counsel after the Court denied the motion for a stay pending appeal and before the evidentiary hearing on damages on the Sanctions Motion does not insulate Keesling from sanctions for conduct that

occurred during his representation of Koper and prior to his withdrawal. *Holgate*, 425 F.3d at 677 (citing *Bader v. Itel Corp. (In re Itel Sec. Litig.)*, 791 F.2d 672, 675 (9th Cir. 1986)). An attorney's withdrawal from a case does not absolve or insulate him from a Rule 11 claim for pre-withdrawal litigation conduct. *Int'l Technologies Mktg., Inc.*, 1:15-cv-2457-GHW, 2019 WL 1244493, at *10; *Logicom Inclusive, Inc. v. W.P. Stewart & Co.*, No. 04 CIV. 604 (CSH)(DFE), 2008 WL 1777855, at *2 (S.D.N.Y. Apr. 16, 2008). First, Keesling received the requisite 21-day safe harbor notice and the First Rule 11 Motion was filed when Keesling represented Koper in the adversary proceedings. Second, even though the First Rule 11 Motion was withdrawn without prejudice and later renewed after the Appeal was withdrawn and the adversary proceedings closed, Keesling cannot seek to avoid the consequences of his actions that led to the filing by plaintiffs of the First Rule 11 Motion and the Second Rule 11 Motion. *Holgate*, 425 F.2d at 677 (finding the renewed Rule 11 motion against counsel to be proper where the Rule 11 motion was refiled 9 months after counsel was permitted to withdraw from the case where the 21-day safe harbor was satisfied and the initial sanctions motion was filed when counsel was still retained even though the initial motion was denied as premature.).

B.  Whether Keesling Should Be Sanctioned

Notwithstanding Koper's express written waiver of all rights to appeal or otherwise challenge the Stipulation, Keesling filed the Rule 60(b) Motion seeking to vacate the Order Approving Stipulation, Sanctions Order, and Consent Judgment pursuant to Fed. R. Civ. P. 60(b)(3) and 60(b)(6). By signing, filing and advocating the Rule 60(b) Motion, Keesling certified to this Court that the motion was (1) not being presented for any improper purpose, (2) factually and legally tenable, and (3) presented after an inquiry reasonable under the circumstances under Rule 11(b).

33

Keesling alleged in the Rule 60(b) Motion that plaintiffs "made misrepresentations and committed misconduct" to induce Koper to enter into the Stipulation and consent to entry of the Sanctions Order and the Consent Judgment by promising to dismiss all pending non-bankruptcy litigation between the parties, and not seek to enforce the Consent Judgment unless Koper violated a confidentiality agreement between the parties. Keesling argued that Koper would not have signed the Stipulation nor consented to the entry of the Sanctions Order and Consent Judgment but for plaintiffs' promise of a global settlement resolving all litigation among the parties, including those against Brittany and Carra.[3] When the parties did not enter into a global settlement as promised, Keesling contended that Koper should no longer be bound by the Order Approving Stipulation, the Sanctions Order or the Consent Judgment and these orders and judgment should be vacated because they were procured by plaintiffs' fraud. Keesling also argued that plaintiffs were using these orders and the Consent Judgment not only against Koper but also against Brittany and Carra in pending federal and state court litigation amongst the parties and that Koper, Brittany and Carra would suffer irreparable harm as a result.

Keesling also argued his Rule 60(b) Motion was filed for a proper purpose and had legal and factual support because (i) he was present during the settlement negotiations for the Sanctions Motion, (ii) Koper executed a declaration in support of his argument that the parties had a global settlement and (iii) there were email exchanges between the attorneys attached to the Rule 60(b) Motion purportedly showing that plaintiffs induced Koper into conceding to the entry of the Stipulation, Sanctions Order and the Consent Judgment.

---

[3] At the time of Koper's bankruptcy filing, plaintiffs had commenced multiple legal proceedings against Koper and Brittany in different jurisdictions, including the Superior Court of the State of California in Orange County, U.S. District Court for the Central District of California, U.S. District Court for the Eastern District of New York, the Supreme Court of the State of New York, and the New Jersey Superior Court.

As set forth in the decision denying the Rule 60(b) Motion, the Court found a lack of any evidentiary or legal support for the arguments advanced by Keesling in the Rule 60(b) Motion. The record placed before the Court simply did not reveal any misrepresentation or misconduct by plaintiffs in connection with the Stipulation or Koper's consent to entry of the Sanctions Order and Consent Judgment. Keesling reviewed drafts of the Stipulation and proposed Sanctions Order and Consent Judgment and had ample opportunity to comment on the documents before submission to the Court. Notwithstanding Keesling's allegations of a promise of a global settlement by plaintiffs, Keesling did not call any witnesses to testify at the hearing on the Rule 60(b) Motion as to what transpired on the morning of October 26, 2015 before the parties jointly presented the Stipulation to the Court for approval. Koper and Colby M. May, Esq., a member of the Board of Directors of TCCSA and whose declaration was submitted in opposition to the Rule 60(b) Motion, were both present at the hearing on the Rule 60(b) Motion. Yet Keesling chose not to call Koper as a witness nor seek to examine Mr. May. Keesling also did not introduce any documentary evidence nor seek in any way to discredit any of the statements made by Mr. May in his declaration. At most, the Court could only note that the parties had settlement discussions and agreed to continue those discussions after the Stipulation was entered and approved by the Court.

The filing of the Rule 60(b) Motion was contrary to Koper's agreement to not otherwise challenge the Stipulation and was an attempt to appeal the Order Approving the Stipulation, Sanctions Order and Consent Judgment after the time to do so had passed. The Court engaged in an extensive and thorough *voir dire* of Koper under oath when the Stipulation was jointly presented to the Court for approval. Koper testified (i) that he had an opportunity to review and discuss the Stipulation with Keesling, (ii) that he understood the terms and conditions of the Stipulation, and (iii) that he entered into the Stipulation of his own free will. Keesling confirmed that he himself had an opportunity to review the terms and conditions of

the Stipulation and to discuss them with Koper. Nevertheless, Keesling asserted that had the off-the-record discussions between the parties been preserved in writing, the outcome of the Rule 60(b) Motion would have been different. The Court is not persuaded. Keesling is an experienced attorney. If the parties had agreed to a condition precedent to the effectiveness of the Stipulation or the terms of a global settlement, he should have drafted that into the Stipulation or made it known to the Court at the time the Court both considered approval of the Stipulation and examined Koper about his understanding of the terms and conditions of the Stipulation. Keesling did not do so, and plaintiffs flatly denied the existence of any condition precedent or that the parties had reached a global settlement. That there was no condition precedent to the effectiveness of the Stipulation, Sanctions Order and Consent Judgment is borne out by the express language contained in each of the documents signed by both Keesling and Koper. Notably, Keesling did not ask a single question of Koper after the Court concluded its examination of Koper concerning the terms and conditions of the Stipulation and his understanding of its terms. To the extent Keesling was accusing plaintiffs of somehow perpetuating a fraud on the Court in failing to disclose some side agreement to resolve all outstanding litigation between the parties, then Keesling and Koper, by their silence, would be equally culpable. However, Keesling did not present any clear and convincing evidence that the Stipulation, the Sanctions Order and Consent Judgment were procured by plaintiffs' misrepresentations or fraud and were anything other than a resolution of the dischargeability litigation and plaintiffs' spoliation of evidence motion without any condition precedent or contingencies. *Int'l Technologies Mktg., Inc.*, 1:15-cv-2457-GHW, 2019 WL 1244493, at *6 (noting that evidence of fraud of the court needs to be established by clear and convincing evidence in order for sanctions to be imposed).

Keesling also referenced a December 12, 2016 discussion between Koper, John Casoria, plaintiffs' general counsel, and plaintiffs' attorneys in which plaintiffs refused to

describe the discussions with Koper as a "settlement" thereby implying that this discussion supports his argument that there was an undisclosed settlement agreement between the parties of all pending bankruptcy and non-bankruptcy litigation. Plaintiffs explain that the discussion to which Keesling refers was not with respect to a global settlement but to an agreement that plaintiffs would not overreach and would limit their execution/collection of the Consent Judgment to 5% of Koper's gross wages during any given pay period as restricted by New York State law with respect to the garnishment of wages. While the Court was not privy to the discussion, the Court does note that this discussion occurred on the day of (i) the Court's inquest hearing on the amount of sanctions to be awarded plaintiffs with respect to the Sanctions Motion and (ii) the amount of debt that should be excepted from discharge in each of the adversary proceedings. There is no evidence that this discussion on December 12, 2016 related to an undisclosed, promised for global settlement between the parties back in October of 2015. What is clear from the record placed before the Court is that there was no global settlement between the parties on the issue of liability, to wit, the amount of sanctions to be awarded plaintiffs in connection with the Sanctions Motion. In October 2015 Koper conceded the allegations of spoliation of evidence in the Sanctions Motion, and the December 2016 hearing was scheduled to consider damages sought by plaintiffs. Keesling withdrew as counsel right before the hearing on damages with respect to the Sanctions Motion.

Based on the record placed before it, the Court can find no purpose for Keesling's filing of the Rule 60(b) Motion other than to (i) avoid the consequences of the agreement Keesling and Koper placed on the record with respect to the Court's consideration and approval of the Stipulation, Sanctions Order and Consent Judgment, and (ii) prevent plaintiffs from using the Stipulation, Sanctions Order and Consent Judgment in pending non-bankruptcy litigation amongst the parties and Brittany. In the face of representations that he himself made to the Court in respect of the Stipulation, Sanctions Order and Consent Judgment, his

client's testimony under oath, his signature on the Stipulation, and the express language of the Stipulation. i.e., that Koper "waived[d] all rights to appeal or otherwise challenge [the] Stipulation," *see* Stipulation at 2, and applying an "objective unreasonableness" standard, Keesling could not have reasonably believed that the Rule 60(b) Motion was presented for a proper purpose and that it had both legal and factual support consistent with the certifications that Keesling as presenter of the challenged pleading is deemed to be making to the Court under Rule 11.

Because plaintiffs have met the procedural requirements of Rule 11 and the Rule 60(b) Motion was filed for an improper purpose and without legal and factual support, the Court finds Keesling violated Rule 11. Having found a violation of Rule 11, the Court need not separately consider whether sanctions should be imposed pursuant to the inherent power of the Court. The Court now addresses whether sanctions should be imposed keeping in mind that a Rule 11 sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

C.    Appropriate Sanctions

As discussed above, upon a finding that Rule 11(b) has been violated, the decision to impose sanctions is subject to the court's discretion and is not mandatory, *Ipcon Collections LLC*, 698 F.3d at 63, and in deciding whether to impose sanctions, the court considers:

> (1) whether the improper conduct was willful, or negligent;
> (2) whether it was part of a pattern o[f] activity, or an isolated event;
> (3) whether it infected the entire pleading, or only one particular count or defense;
> (4) whether the person has engaged in similar conduct in other litigation;
> (5) what effect it had on the litigation process in time or expense;
> (6) whether the responsible person is trained in the law; and
> (7) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case.

See *Bobcar Media LLC*, Slip Copy No. 16-CV-885 (JPO), 2019 WL 422613, at *3 (quoting *Cont'l Cas. Co.*, No. 11 Civ. 3979, 2017 WL 1901969, at *7).

The Court finds the first, third, fifth and sixth factors to weigh in favor of sanctions. As to the first factor of willfulness, Keesling's decision to file the Rule 60(b) Motion could only be willful, and not negligent, given Koper's agreement to not challenge the Stipulation and Koper's prior testimony in support of an order approving the Stipulation, the Sanctions Order and Consent Judgment. As to the third factor, the entire Rule 60(b) Motion was filed for an improper purpose, without proper legal and factual support, and sought to impact not just the proceedings before this Court but other non-bankruptcy proceedings between non-debtor parties. By moving to set aside the Stipulation, Sanctions Order and Consent Judgment, and the admissions as to the factual findings and legal conclusions contained therein, Keesling and Koper sought not only to reinstate the hearing on the Sanctions Motion and the trial in the three adversary proceedings but also to negate, at minimum, or reverse the impact of the Stipulation, Sanctions Order and Consent Judgment on other state and federal proceedings involving plaintiffs, Koper, and Brittany.

As to fifth factor with respect to impact on the litigation in terms of time and expense, plaintiffs incurred significant legal fees in opposing the Rule 60(b) Motion. Plaintiffs have requested an award of attorneys' fees of $75,503 and costs of $566.19. In reviewing the time records, the Court finds that plaintiffs incurred $35,864 in fees and $566.19 in expenses with respect to Winters & King, as lead counsel, and $18,585 in fees with respect to local co-counsel, Shipman & Goodman, in opposing the Rule 60(b) Motion and drafting and serving the memorandum of law for the First Rule 11 Motion.[4]  Moreover, the Court was required to

---

[4] Plaintiffs submitted declarations showing (i) $44,696 in attorney's fees and $566.19 in airfare, meals and taxi costs incurred by Winters & King in traveling to and from New York to prepare for and attend the March 3, 2017 hearing regarding the Rule 60(b) Motion, and (ii) $30,807 in attorney's fees incurred by Shipman & Goodman. The Court notes that $8,662 of fees incurred by Mr. Nelson at Winters & King after March 22, 2016 relate to

expend time and resources reviewing the Rule 60(b) Motion, hearing oral argument and issuing a written decision with respect to the Rule 60(b) Motion. In addition, the Court expended significant time preparing for the evidentiary hearing on the Sanctions Motion and trial in the three adversary proceedings in October of 2015 and in conducting hearings, including a *voir dire* of Koper, over a two-day period to approve the terms and conditions of the Stipulation, the Sanctions Order and Consent Judgment presented jointly by the parties. As to the sixth factor, Keesling is an experienced attorney and it is implausible, given his trial experience, to conclude that he was not aware of the consequences, both legal and factual, of his and Koper's agreeing to the terms and conditions of the Stipulation, the Sanctions Order and Consent Judgment. Further, Keesling represented to the Court that he discussed the terms and conditions of the Stipulation with Koper and that Koper understood the terms and conditions of the Stipulation; and not once did Keesling represent that the parties had agreed to an express, written condition precedent to the effectiveness of the Stipulation, Sanctions Order and the Consent Judgment nor was such condition precedent memorialized in any written submission by Keesling.

Factors two and four mitigate against the severity of any sanctions to be imposed. To the Court's knowledge, this is an isolated event and no evidence was presented to the Court that Keesling has engaged in similar conduct in other litigation. All proceedings between the parties, other than the pending Second Rule 11 Motion, have concluded and Keesling has withdrawn as Koper's counsel. Moreover, Keesling does not regularly practice before this

---

plaintiffs' preparation for the evidentiary hearing as to damages in connection with the Sanctions Motion, which fees would have been incurred notwithstanding the filing of the Rule 60(b) Motion. In addition, $170 in fees incurred by Mr. King from March 21 to 23, 2016 relate to a review of a court Certificate of Notice to Koper of a filed transcript and emails from Koper regarding the transcript and have no relationship to Keesling specifically. With respect to Shipman & Goodman's fees, only $18,585 was expended with respect to defending against the Rule 60(b) Motion, including the drafting and submission of proposed findings of fact and conclusions of law. The remainder of the fees in the sum of $12,222 relate to work done with respect to the Appeal and Koper's motion for stay pending appeal, which fees the Court will not consider for the reasons discussed above.

Court, so there is little to no risk that Keesling will engage in similar conduct in the future in matters before the Court.

As to the seventh factor, in determining the appropriate sanction, the Court is guided by the purpose behind Rule 11 that limits the sanction to be imposed to "what suffices to deter repetition of the conduct", Fed. R. Civ. P. 11(c)(4), bearing in mind that "Rule 11 is not a fee shifting statute", *Cooter & Gell*, 496 U.S. at 409. Guided by this tenet, the Court finds that Keesling's conduct in this matter warrants an award of monetary sanctions and that it is appropriate under the circumstances that he pay a portion of the reasonable attorneys' fees and expenses incurred by plaintiffs as a result of his violation of Rule 11(b).  In reviewing the fee statements submitted by plaintiffs' counsel for consideration of an award of attorneys' fees and costs, the Court is mindful of the Supreme Court's instruction that "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838, 131 S.Ct. 2205, 2216, 180 L.Ed.2d 45 (2011). As such, courts "may take into account their overall sense of a suit and may use estimates in calculating and allocating an attorney's time." *Id.* Here, the Court is familiar with the litigation, plaintiffs' spoliation motion, and entry of the Stipulation, Sanctions Order and Consent Judgment. Accordingly, the Court is well-positioned to review plaintiffs' request for an award of attorneys' fees and costs.

After careful consideration, the Court finds an award of attorney's fees in the sum of $30,000 and expenses in the amount of $566.19 will have the necessary deterrent effect. As Winters & King's and Shipman & Goodman's fees make up 66% and 34% of the total fees incurred by plaintiffs in respect of the Rule 60(b) Motion and drafting and serving the Rule 11 motion, the sanction award shall similarly be apportioned between the firms.

IV.    Conclusion

For all of the foregoing the reasons, the Second Rule 11 Motion is hereby granted and plaintiffs are awarded attorney's fees of $18,800 and expenses of $566.19 with respect to Winters & King and attorney's fees of $10,200 with respect to Shipman & Goodman. These amounts are to be payable fourteen days after entry of this decision.

So ordered.



**Dated: August 25, 2020**
**Central Islip, New York**

**Louis A. Scarcella**
**United States Bankruptcy Judge**